IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SYLVIA ELLIS, o/b/o E.D.B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:10cv95-CSC |
| | ) |
| MICHAEL ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Sylvia Ellis filed this lawsuit on behalf of her son, E.D.B.,[1] to review a final judgment by defendant Michael J. Astrue, Commissioner of Social Security, in which he determined that E.D.B. is not "disabled" and therefore, not entitled to supplemental security income benefits. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The parties have consented to the undersigned United States

---

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court has redacted the plaintiff's minor child's name throughout this opinion and refers to him only by his initials, E.D.B.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  The court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons that follow, the court concludes that the Commissioner's decision denying E.D.B. supplemental security income benefits should be affirmed.

## I.  STANDARD OF REVIEW

An individual under 18 is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(I) (1999).  The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.
2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment.  If the claimant's impairment is not severe, he is not disabled.
3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments

are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In determining whether a child's impairment functionally equals a listed impairment, an ALJ must consider the extent to which the impairment limits the child's ability to function in the following six "domains" of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004); 20 C.F.R. § 416.926a(b)(1). A child's impairment functionally equals a listed impairment, and thus constitutes a disability, if the child's limitations are "marked" in two of the six life domains, or if the child's limitations are "extreme" in one of the six domains. *Shinn*, 391 F.3d at 1279; 20 C.F.R. § 416.926a(d).

In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence. *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). (alteration in original) (quotation marks omitted). The court must, however, conduct an "exacting examination of the

3

[Commissioner's] conclusions of law." *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).

## II.  ISSUES

As stated by the plaintiff, there are two issues in this case.

I. The Commissioner's decision should be reversed because, the ALJ's functionality findings lack the support of substantial evidence and contain no rationale or reference to any supporting evidence.

II. The Commissioner's decision should be reversed because, the ALJ failed to evaluate the limitations imposed by the combinations of E.D.B.'s impairments under the proper legal standard.

(Pl's Br., doc. # 12 at 6).

## III.  DISCUSSION

The plaintiff raises two issues related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of the plaintiff's specific arguments because the court concludes the ALJ's determination is supported by substantial evidence, and even if the ALJ erred, any error is harmless.

E.D.B. was born on January 24, 1998. He was eight (8) years old on the date the application for benefits was filed. (R. 18). The ALJ concluded that E.D.B. is not disabled and therefore denied his claim for supplemental security income. Under the first step, the ALJ found that E.D.B. is not engaged in substantial gainful activity. At the second step, the

4

ALJ found that E.D.B. suffers from severe impairments of "attention deficit hyperactivity disorder, borderline intellectual functioning and encopresis."[3]  (*Id*.)  At step three, the ALJ found that E.D.B. did not have an impairment or combination of impairments that met or medically equaled a Listing in Appendix 1 of 20 C.F.R. Part 404, Subpart P.  (R. 27).  The ALJ then considered whether E.D.B.'s impairments were "functionally equal" a level of severity in a Listing.  (R. 27-30).

In order to functionally equal a listing, E.D.B.'s impairments must result in "marked" limitations in two or more of six functional domains or "extreme" limitation in one functional domain.  20 C.F.R. § 416.926a(a).  These six functional domains are set forth in the applicable regulations: Acquiring and using information; Attending and completing tasks; Interacting and relating to others; Moving about and manipulating objects; Caring for yourself; and Health and physical well-being.  *Id*. at 416.926a(b).

---

[3]  Encopresis is a problem that children develop due to constipation and possibly caused by stress. Boys are six (6) times more likely to develop the condition that girls.

> Encopresis is a problem that children can develop due to chronic (long-term) constipation. With constipation, children have fewer bowel movements than normal, and the bowel movements they do have can be hard, dry, and difficult to pass. Once a child becomes constipated, a vicious cycle can develop. The child may avoid using the bathroom to avoid discomfort. Stool can become impacted (packed into the rectum and large intestine) and unable to move forward. The rectum and intestine become enlarged due to the hard, impacted stool. Eventually, the rectum and intestine have problems sensing the presence of stool, and the anal sphincter (the muscle at the end of the digestive tract that helps hold stool in) loses its strength. Liquid stool can start to leak around the hard, dry, impacted stool, soiling a child's clothing

*What is Encopresis? available at* http://www.allkids.org/body.cfm?xyzpdqabc=0&id=412&action=detail&AEProductID=Greystone%5Fpeds&AEArticleID=332&AEArticleType=Digestive%20%26%20Liver%20Disorders (last visited on July 22, 2011)

The ALJ concluded that E.D.B. has "less than marked limitation" in the domains of acquiring and using information, attending and completing tasks, and interacting and relating to others. (R. 28-30). He further concluded that E.D.B. has no limitation in the domains of moving about and manipulating objects and health and well-being. (R. 31). However, the ALJ concluded that E.D.B. has a marked limitation in his ability to care for himself. (R. 31). Finally, the ALJ concluded that E.D.B. does not have an extreme limitation in one area of functioning, nor does he have marked limitations in two areas of functioning. (R. 31). Consequently, the ALJ concluded that E.D.B. was not disabled. (*Id.*)

The crux of this case is the ALJ's determination of the severity of E.D.B.'s functional limitations. E.D.B. argues that the ALJ failed to properly evaluate his impairments and did not properly state the reasons for finding that he was not disabled. The plaintiff complains that the ALJ failed to state "with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." (Pl's Br., doc. # 12, at 7). The ALJ stated in his opinion that he had considered all of the claimant's symptoms and medical evidence. (R. at 27). Even thought the ALJ did not specifically state the weight assigned to each piece of evidence, the ALJ recited all the applicable law and detailed all the medical evidence. The ALJ specifically stated that he accepted the testimony of the medical expert, and he rejected the statements of the claimant's mother regarding the severity of E.D.B.'s limitations.

> At the hearing, Dr. Durham testified that the claimant has a less than marked limitation in acquiring and using information, a less than marked limitation in attending and completing tasks, a less than marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects,

> a marked limitation in caring for himself and no limitation in health and physical well-being. The claimant has functioned at this level since 2006. I accept the testimony of our medical expert because I find that the testimony is credible (sic) makes sense and as an independent finder of facts believe the testimony to be true, accurate and correct.
>
> I find that the testimony and statements of record offered by the claimant's mother were sincere in presenting the problems of her child's situation; however, the limitations alleged are out of proportion to the objective medical evidence of record.

(R. 27-28). Thus, the ALJ's general comments about the evidence are sufficient to show that he considered all the evidence.

Moreover, even if it was error, it is harmless. The opinion of the ALJ shows that he carefully considered the evidence in this case and was extremely familiar with it. A remand is not required. In this case, the ALJ concluded that although E.D.B. has deficits in acquiring and using information, only his ability to care for himself rises to the level of marked. None of his limitations rise to the level of extreme. (R. 31). Substantial evidence supports the ALJ's determination. Although E.D.B.'s mother asserts that he suffers from ADHD, none of E.D.B.'s physicians who evaluated E.D.B. diagnosed him as suffering from ADHD.[4] In fact, testing demonstrated that he does not suffer from ADHD. (R. 200-01, 210).

On August 31, 2004, E.D.B. underwent a psychological evaluation by Dr. Dorn Majure, PhD. At that time, E.D.B.'s mother reported that E.D.B. was in special education classes and his grades were poor. (R. 171). E.D.B.'s school records demonstrate that he is

---

[4] Dr. Majure, a 2004 consultative psychologist, diagnosed E.D.B. as suffering from ADHD. However, subsequent testing and evaluations do not support that diagnosis.

not in special education classes, and his grades are above average (B's). (R. 119-120). Dr. Majure opined that E.D.B.'s

> ... developmental status appeared to be within normal limits. He was cooperative during this evaluation. His speech was at a normal rate. His stream of thought appeared grossly normal and logical. Psychosis was denied and not evident. His affect appeared to be appropriate to content of thought and conversation. His mood appeared to be normal. The relationship between the examiner and the claimant was appropriate. Symptoms of anxiety were denied. Symptoms of depression were denied. His appetite was reported to be good. [E.D.B.] reportedly experiences initial insomnia and is currently prescribed Clonidine. Suicidal and homicidal ideation was denied. Recent stressors were denied. His level of consciousness appeared to be alert. He was oriented to person, place, time, and situation. His recent and remote memory appeared to be good. His estimated level of intellectual functioning appears to be in the borderline to low average range. His judgment, insight and decision-making appeared to be intact.

(R. 171-72). Dr. Majure concluded that E.D.B.

> appears to be mildly impaired in his ability to function in an age-appropriate manner cognitively, communicatively, socially, adaptively, behaviorally, and in concentration, persistence and pace.

(R. 173)

On June 20, 2006, Dr. Guy Renfro, PhD, conducted another psychological evaluation of E.D.B. (R. 184-86). At that time, E.D.B.'s mother reported that he was not in any special education classes. (R. 185). She reported that he was prescribed Adderall but she took him off the medication because he was not eating, and she did not see much change in his behavior when he was on the medication. (*Id.*) Dr. Renfro opined that

> [a]lthough his mother complains of hyperactivity, he did not display any excessive activity level, unusual impulsivity, or excessive distractibility during this evaluation. His mother did describe episodes of encopresis.

8

(R. 186). Dr. Renfro diagnosed E.D.B. as suffering from encopresis (without incontinence or constipation), and borderline intellectual functioning based on prior testing. (*Id*.)

Finally, on September 8, 2006, Marnie Smith Dillon, a licensed clinical psychologist, conducted an evaluation and testing on E.D.B. (R. 193-203). During this evaluation, E.D.B.'s mother denied any "academic concerns." (R. 194). E.D.B.'s test results were "not suggestive of the presence of ADHD." (R. 200-01). A 'provisional diagnosis of ADHD, Combined Type is also given *based on clinical history*." (R. 201) (emphasis added).

E.D.B. and his mother began therapy at Associate Psychologists in September 2006. Testing on October 3, 2006 was not suggestive of ADHD. (R. 210). Treatment notes indicate that E.D.B. and his mother disagree about his "accidents" – E.D.B. denies accidents at school but his mother insists that his pants are soiled when he comes home. (*Id*.) After missing two appointments, E.D.B. and his mother presented for therapy on November 9, 2006. At that time, E.D.B.'s mother complained about his encopresis; she does not have a medical explanation for his condition. (R. 209). On January 4, 2007, E.D.B. and his mother appeared for therapy, but his mother was agitated and uncooperative. (R. 208). On March 21, 2007, she reported taking E.D.B. off his medication because it was "not doing any good." (*Id*.).

On January 21, 2008, E.D.B.'s mother complained that he could not "stay focused." (R. 207). E.D.B. was not on medication. On February 13, 2008, E.D.B.'s mother reported that he had two 'accidents' in class. (*Id*.) On March 11, 2008, he was doing much better,

and was not on medication.  (*Id.*)  On April 14, 2008, treatment notes indicate that E.D.B.'s mother 'may be seeking secondary gain' from E.D.B.'s condition.  On April 24, 2008, E.D.B. denied that the encopresis was a problem but his mother insisted that it was.  (R. 206).

On May 8, 2008, E.D.B.'s mother reported that although E.D.B.'s medication dosages were increased by their family physician, she was not giving him the medication.  (R. 206). Treatment notes indicate that E.D.B.'s mother had "a litany of complaints" about him.  (*Id.*) During family therapy on May 28, 2008, E.D.B. was not oppositional to his mother "but rather resign[ed] . . . to the fact that [his mother] [wa]s going to complain about him no matter what he does."  (R. 205).

On July 27, 2007, E.D.B. was diagnosed with encopresis based on history provided by his mother.  (R. 221-22).

At the administrative hearing, E.D.B.'s mother described her inability to keep him focused on his homework, (R. 43), his inability to sit still (R. 45), and his inability to interact socially.  (R. 42).  According to his mother, E.D.B. has no friends because they call him names, he is "constantly" getting into fights, and he has accidents "four days out of a seven-day period."  (*Id.*)  Even if E.D.B.'s mother's testimony was taken as true, these limitations are insufficient to support a finding that E.D.B. has extreme or marked limitations of functioning in any of the six domains sufficient to meet, medically equal, or functionally equal a Listing.  Unquestionably, E.D.B. has some degree of limitation interacting and relating to others and in his ability to care for himself.  However, the evidence does not

support a finding that E.D.B. has an "extreme" limitation in these or any other areas of functioning, or "marked" limitations in two or more areas of functioning.

## CONCLUSION

In short, the court has carefully and independently reviewed the record, and concludes that the ALJ's conclusion that E.D.B. is not disabled is supported by substantial evidence. Thus, the decision of the Commissioner should be affirmed.

A separate order will issue.

Done this 27th day of July, 2011.

                                         /s/Charles S. Coody
                                      CHARLES S. COODY
                                      UNITED STATES MAGISTRATE JUDGE